**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

SIERRA MORAN,

Plaintiff,

Case No.
Hon.

v

MILAN AREA SCHOOLS,

Defendant.

David A. Nacht
Grace Cathryn Cretcher
NACHTLAW, P.C.
Attorneys for Plaintiff
501 Avis Drive, Suite 3
Ann Arbor, MI 48108
(734) 663-7550
dnacht@nachtlaw.com
gcretcher@nachtlaw.com

**PLANTIFF'S COMPLAINT AND JURY DEMAND**

Plaintiff Sierra Moran, by and undersigned counsel, NACHTLAW, P.C., and states the following:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff Sierra Moran is an individual who at all relevant times resided in the State of Michigan.

2. Defendant Milan Area Schools is a public school district organized and existing under the laws of the State of Michigan with its principal place of business located at 200 Big Red Dr., Milan, Michigan 48160.

3. At all relevant times, Defendant employed approximately 350 employees.

4. This Court has federal subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

5. This Court has subject-matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331, which provides original jurisdiction over civil actions arising under the laws of the United States. 28 USCS § 1331. This Court also has jurisdiction over Plaintiff's civil-rights claims pursuant to 28 U.S.C. § 1343(a)(4). 28 USCS § 1343.

6. On June 29, 2026, the Equal Employment Opportunity Commission issued Plaintiff a Determination and Notice of Rights for Charge No. 471 03722, dismissing the charge and notifying Plaintiff of her right to sue.

7. This Complaint is filed within ninety days of Plaintiff's receipt of the Notice of Right to Sue.

8. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district, including Plaintiff's employment at Milan Middle School in Milan, Michigan.28 USCS § 1391

## FACTUAL BACKGROUND

### *Plaintiff's Disability and Initial Accommodation*

9. Plaintiff suffers from Post-Traumatic Stress Disorder ("PTSD") resulting from serious sexual violence she endured in an abusive prior relationship.

10. Plaintiff's PTSD was diagnosed around the end of 2020.

11. Plaintiff's PTSD is a qualifying disability under the Americans with Disabilities Act.

12. Plaintiff disclosed her PTSD diagnosis to Defendant upon her hire.

13. Before joining Defendant, Plaintiff's prior employer had granted her intermittent FMLA leave to accommodate her PTSD.

14. Plaintiff provided Defendant with documentation from her doctor establishing her need for FMLA-related accommodation.

***Plaintiff's Employment with Defendant***

15. Defendant hired Plaintiff as a STEAM teacher at Milan Middle School beginning in the 2022-23 school year.

16. At the end of Plaintiff's first year teaching at Milan Middle School, a student came up behind Plaintiff, jabbed her fingers into Plaintiff's ribs, screamed in Plaintiff's ear, and caused Plaintiff to experience a flashback.

17. Plaintiff reacted defensively before realizing that the person behind her was a student.

18. Plaintiff raised one hand defensively but did not strike the student or otherwise make physical contact with her.

19. Plaintiff instructed the student to step away from her and immediately removed herself from the interaction.

20. Following the incident, Plaintiff experienced increased anxiety, panic attacks, nightmares, and fear in the classroom.

21. Plaintiff required additional therapy and sought medical treatment for her increased panic attacks and symptoms following the incident.

22. When Plaintiff returned for the 2023-24 school year, Plaintiff PTSD and anxiety symptoms remained significantly worse in the classroom.

23. During the 2023-24 school year, the Milan Middle School Principal and Assistant Principal who had successfully accommodated Plaintiff's PTSD the prior year departed and were replaced by a new administration, including Principal Jennifer Bookout and Assistant Principal Brad Baden.

24. The departing principal carefully explained Plaintiff's accommodations to the new administration, including Plaintiff's ability to take breaks from the classroom under certain circumstances.

25. Principal Bookout was initially comfortable with Plaintiff's accommodations.

26. As Plaintiff's evaluator, Principal Bookout rated Plaintiff "effective" at the end of the 2023-24 school year.

***Denial of Reasonable Accommodations***

27. At the beginning of the 2024-25 school year, after organizational changes by Defendant, Plaintiff learned that instead of Principal Bookout, her evaluator would now be Assistant Principal Baden.

28. On September 9, 2024, Plaintiff made a request to Defendant's Central Office regarding when her intermittent FMLA accommodation expired so her doctor would have time to renew the paperwork, but she did not receive a response.

29. On October 31, 2024, after breaking up a fight between students in the hall and walking one of them to the office, Plaintiff attempted to inform Assistant Principal Baden that she needed to take an FMLA intermittent leave-related break.

30. Assistant Principal Baden immediately refused Plaintiff's request for a break, telling her to go back to her classroom.

31. On October 31, 2024, while attempting to fix a student's Halloween costume, Plaintiff suffered a concussion when her head accidentally collided with the student's.

32. On December 16, 2024, Plaintiff emailed a letter from her doctor substantiating her PTSD diagnosis to Principal Bookout and Assistant Principal Baden and asked if this would be sufficient to support the renewal of her intermittent FMLA accommodation.

33. After Assistant Principal Baden asked for additional specifics, Principal Bookout responded to his email stating that the letter Plaintiff had provided should be fine and that Plaintiff should forward it to Defendant's Central Office.

34. On December 17, 2024, a student became very upset, getting in Plaintiff's face, yelling, and hitting a tabletop.

35. Plaintiff immediately called for support from Milan Middle School social worker Kyle McIntosh and Assistant Principal Baden.

36. Despite the presence of McIntosh and Baden, the student's animated anger continued to trigger Plaintiff's PTSD, which Plaintiff made Assistant Principal Baden aware of immediately.

37. Assistant Principal Baden provided no support or accommodation whatsoever, simply telling Plaintiff to deal with it as it was the end of the school day. In response to the student's behavior, Assistant Principal Baden sent a text message stating, "We said we wanted to trigger a meltdown. Mission Accomplished!"

38. Two days later, on December 19, 2024, the same student again began disrupting Plaintiff's classroom by hitting tables and knocking over stools, to the point that Plaintiff was unable to continue her lesson.

39. This aggressive student behavior continued on multiple occasions thereafter, but Assistant Principal Baden continuously ignored or actively dismissed Plaintiff's requests for support.

40. Over February and March of 2025, Defendant's Assistant Superintendent Ryan McMahon reached out to Plaintiff multiple times to request additional documentation related to her intermittent FMLA leave, which Plaintiff in turn reached out to her doctor to request.

41. On March 20, 2025, during Plaintiff's fifth hour prep period, Assistant Principal Baden asked Plaintiff to come to Principal Bookout's office at 1:15 p.m.

42. In that meeting, Principal Bookout and Assistant Principal Baden insisted that Plaintiff stay in her classroom as much as possible, notwithstanding Plaintiff's protestations of needing to use her intermittent FMLA accommodation.

43. Principal Bookout and Assistant Principal Baden further insisted that Plaintiff be in her classroom by 7:30 a.m. every morning prepared to teach.

44. The new administration was uninterested in the fact that their total unwillingness to accommodate Plaintiff's PTSD was beginning to cause frequent debilitating anxiety attacks upon attempting to enter the school, which Plaintiff had brought to Assistant Principal Baden's attention on multiple prior occasions.

45. Although Plaintiff explicitly raised the fact that she had texted Bookout and Baden on every occasion she had needed classroom coverage, as well as recording the time in her FMLA time log, the administrators were uninterested.

46. Principal Bookout falsely accused Plaintiff of leaving her students unattended.

47. The new expectations imposed by Principal Bookout and Assistant Principal Baden were in direct conflict with Plaintiff's intermittent FMLA leave accommodation and were memorialized in writing on March 21, 2025.

***Adverse Employment Action and Termination***

48. On May 2, 2025, at what was supposed to be Plaintiff's walk-through observation meeting with Assistant Principal Baden, there was minimal discussion about Plaintiff's lesson before Principal Bookout arrived in Assistant Principal Baden's office.

49. Principal Bookout and Assistant Principal Baden informed Plaintiff that she would be rated "ineffective" and would not have a job to return to in the fall.

50. When Plaintiff asked to see her evaluation rubric, Principal Bookout and Assistant Principal Baden told her it had not been completed yet and sent her back to teach her sixth hour class.

51. Plaintiff immediately emailed Defendant's then-Superintendent Bryan Girbach and her union representative, Jill Gerweck.

52. On May 6, 2025, union representative Gerweck advised Plaintiff to resign before being terminated because Defendant was permitted to fire Plaintiff for any reason within her first three years.

53. Although union representative Gerweck had reached out to Superintendent Girbach on Plaintiff's behalf, asking for a meeting to discuss how Plaintiff's accommodations were being violated, Superintendent Girbach responded that he would only meet with Plaintiff if she agreed

to hand in her resignation during that meeting, or he would send Plaintiff's name to the Board of Education for termination, giving Plaintiff until Monday, May 12, 2025, to do so.

54. On May 13, 2025, Plaintiff sent Superintendent Girbach and Principal Bookout a letter providing notice that she did not intend to resign.

55. On May 27, 2025, Plaintiff finally had the chance to speak with Superintendent Girbach, and Plaintiff attempted to bring up the complete dismissal of her PTSD-related reasonable accommodations.

56. Superintendent Girbach refused to even hear Plaintiff out, stating bluntly that the termination was Plaintiff's own fault and that he would give Plaintiff one more chance to resign before sending her name to the Board, which Plaintiff declined.

57. During the next meeting of the Board of Education, Plaintiff took the opportunity to make a statement about her nonrenewal.

58. Plaintiff made it very clear that all her time out of the classroom was taken with explicit notice to administrators and was recorded in her FMLA intermittent leave time log.

59. Plaintiff explained that one of her accommodations was extended time and a modified workload when symptoms arose, but that instead of receiving this accommodation, she had found herself with additional expectations and responsibilities when her PTSD was triggered.

60. Plaintiff explained that she had worked hard on her classroom management skills with growing confidence and success, resulting in her students clearly understanding her expectations, consistently arriving prepared, and successfully following classroom routines, but this success was wholesale ignored.

61. Plaintiff further noted that although she had been accused of "undermining my co-teacher in front of students," when she shared this claim with the co-teacher herself, the co-teacher was appalled.

62. Plaintiff also noted that she had been accused of failing to consistently record grades or provide timely feedback based solely on her use of paper records while she was actively suffering from a traumatic brain injury.

63. Plaintiff further noted that Assistant Principal Baden's claims that she had been provided with resources, regular meetings, and mentorship were explicitly and affirmatively false.

64. On June 16, 2025, Plaintiff was at Milan Middle School cleaning out her classroom when social worker McIntosh presented Plaintiff with documents requiring her signature regarding the Board's nonrenewal of her teaching contract on Assistant Principal Baden's recommendation.

65. Rather than providing the documents to Plaintiff directly, Assistant Principal Baden had handed them to a colleague in an unsealed file folder.

## COUNT I

## DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA

66. Plaintiff incorporates by reference Paragraphs 1 through 65.

67. At all relevant times, Defendant was a covered entity under the Americans with Disabilities Act because Defendant was a person engaged in an industry affecting commerce who had fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.42 USCS § 12111

68. At all relevant times, Plaintiff was a qualified individual with a disability within the meaning of the Americans with Disabilities Act.

69. Plaintiff's PTSD substantially limited one or more of her major life activities.

70. Plaintiff was able to perform the essential functions of her position as a STEAM teacher with or without reasonable accommodation.

71. Defendant discriminated against Plaintiff on the basis of her disability in regard to the terms, conditions, and privileges of her employment.42 USCS § 12112

72. Defendant failed to make reasonable accommodations to the known physical or mental limitations of Plaintiff, an otherwise qualified individual with a disability who was an employee, despite Defendant's inability to demonstrate that the accommodation would impose an undue hardship on the operation of Defendant's business.42 USCS § 12112

73. Defendant denied employment opportunities to Plaintiff, a qualified individual with a disability, based on Defendant's refusal to make reasonable accommodation to Plaintiff's PTSD.42 USCS § 12112

74. Defendant's actions were intentional, willful, and in reckless disregard of Plaintiff's federally protected rights.

75. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer damages, including lost wages, lost benefits, emotional distress, humiliation, and damage to her professional reputation.

## COUNT II

## FMLA RETALIATION

76. Plaintiff incorporates by reference Paragraphs 1 through 75.

77. Plaintiff engaged in activity protected by the FMLA by requesting, using, and attempting to renew intermittent FMLA leave related to her PTSD.

78. Defendant knew that Plaintiff requested and used intermittent FMLA leave and that Plaintiff sought renewal of her intermittent FMLA documentation.

79. Defendant took adverse employment actions against Plaintiff after and because of her protected FMLA activity, including refusing Plaintiff's FMLA leave-related break, imposing requirements that conflicted with her intermittent FMLA leave, rating her "ineffective," and nonrenewing her teaching contract.

80. Defendant's adverse actions were causally connected to Plaintiff's requests for and use of intermittent FMLA leave.

81. Defendant's conduct was intentional, willful, and in reckless disregard of Plaintiff's rights under the FMLA.

82. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer damages, including lost wages, lost benefits, emotional distress, humiliation, and damage to her professional reputation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant and award:

A Compensatory damage for lost wages, lost benefits, and other pecuniary losses in an amount to be determined at trial;

B Compensatory damages for emotional distress, humiliation, and other nonpecuniary losses in an amount to be determined at trial;

C Punitive damages in an amount to be determined at trial;

D Reasonable attorneys' fees and costs as authorized by law;

E Prejudgment and post-judgment interest as allowed by law; and

F Such other and further relief as this Court deems just and proper.

Respectfully submitted,

/s/ David A. Nacht
David A. Nacht (0091516)
**NACHTLAW, P.C.**
*Attorneys for Plaintiff*
501 Avis Drive, Suite 3
Ann Arbor, MI 48108
(734) 663-7550
dnacht@nachtlaw.com

Dated: September 22, 2026

## DEMAND FOR TRIAL BY JURY

Now Comes, Plaintiff Sierra Moran, by and through her attorneys, NACHTLAW, P.C., and hereby demands a trial by jury in the above-captioned matter for all issues so triable.

Respectfully submitted,

/s/ David A. Nacht
David A. Nacht (0091516)
**NACHTLAW, P.C.**
*Attorneys for Plaintiff*
501 Avis Drive, Suite 3
Ann Arbor, MI 48108
(734) 663-7550
dnacht@nachtlaw.com

Dated: September 22, 2026